## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **LILY ROBOTICS, INC.,** | Case No. 17-10426 (KJC) |
| Debtor.[1] | |

## MOTION OF THE DEBTOR FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, AND 507, BANKRUPTCY RULES 2002, 4001, 6004, AND 9014, AND LOCAL RULE 4001-2 (I) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING, (II) GRANTING LIENS AND PROVIDING SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) SCHEDULING A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF

The above-captioned debtor and debtor-in-possession by and through its proposed undersigned counsel, hereby files this *Motion of the Debtor for Entry of Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rule 4001-2 (I) Authorizing the Debtor to Obtain Postpetition Financing, (II) Granting Liens and Providing Super-Priority Administrative Expense Status, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief.* In support of the Motion, the Debtor relies upon the *Declaration of Curtis G. Solsvig III in Support of Debtor's Chapter 11 Petition and First Day Relief* (the "First Day Declaration"), filed with the Court concurrently herewith and incorporated herein, and respectfully represents and sets forth as follows:

---

[1] The last four digits of the Debtor's federal tax identification number are 8604. The Debtor's headquarters and mailing address is 374 Harriet Street, San Francisco, California 94103.

## JURISDICTION

1.      This Court has jurisdiction over the Debtor, its estate, and this matter pursuant to

28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

The Debtor consents, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Delaware, to the entry of a

final judgment or order with respect to this Motion, if it is determined that the Court would lack

Article III jurisdiction to enter such final order or judgment absent consent of the parties.

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested in this Motion are sections 105(a),

361, 362, 363, 364, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and

9014, and Local Rule 4001-2.

## SUMMARY OF RELIEF REQUESTED

4.      The Debtor seeks the postpetition financing necessary for the Debtor to

administer this chapter 11 case.  With the postpetition financing, the Debtor will have sufficient

liquidity to ensure the proper return of customer refunds (as explained in the First Day

Declaration), administer the chapter 11 case and conduct a successful sale transaction. It is

therefore imperative that the Debtor has access to sufficient liquidity to avoid irreparable harm.

To provide sufficient time to document the financing set forth herein, the Debtor and Spark

Capital IV, L.P. as successor in interest to SVB Financial Group (the "Prepetition Secured

Lender") have also filed a concurrent motion, seeking authority for the Debtor to use cash

collateral until approval of this Motion and entry of an Interim Order approving this Motion.

5.      Accordingly, by this Motion, the Debtor is seeking, *inter alia*:

     a.      authorization to enter into a postpetition financing arrangement on the terms set forth in the term sheet attached hereto as Exhibit B (the "<u>Term Sheet</u>") for a debtor-in-possession loan agreement to be filed with the Court no later than 10 days prior to the hearing to approve the Interim Order (the "<u>Postpetition Loan Agreement</u>", together with such other documents and agreements entered into in connection therewith, the "<u>Postpetition Loan Documents</u>");

     b.      authorization to obtain a super-priority postpetition financing consisting of a delayed draw term loan in a principal amount of up to $3,027,000.00 (the "<u>DIP Facility</u>") in accordance with the Postpetition Loan Agreement between the Debtor, as borrower (the "<u>Borrower</u>"), and Silicon Valley Bank, as lender (the "<u>DIP Lender</u>");

     c.      authorization to borrow under the Postpetition Loan Documents an amount up to $800,000.00 of the DIP Facility on an interim basis, in accordance with the terms and conditions to be set forth in the Postpetition Loan Agreement;

     d.      authorization to execute and deliver the Postpetition Loan Agreement and the Postpetition Loan Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith;

     e.      authorization to grant to the DIP Lender assurances for the full and timely payment of the Debtor's obligations under the DIP Facility by granting to the DIP Lender (i) pursuant to section 364(c)(1) of the Bankruptcy Code, a superpriority administrative expense claim (a "<u>Superpriority Administrative Expense Claim</u>") having priority over any and all expenses and claims specified in any other section of the Bankruptcy Code, including, without limitation, sections 503(b) and 507(b) of the Bankruptcy Code, subject to the Carve Out (as defined below), and (ii) pursuant to section 364(c)(2) and (d) of the Bankruptcy Code, liens on, and security interests in, any and all of the DIP Collateral (as defined below), subject only to the Carve Out;

     f.      authorization to use the proceeds of the DIP Facility in accordance with a budget in form and substance satisfactory to the DIP Lender, including to fund the costs associated with the Debtor's chapter 11 case, and to fund other postpetition expenses of the Debtor during the chapter 11 case (as further discussed below);

g.    authorization to use the cash collateral of the Prepetition Secured Lender and provide adequate protection to the Prepetition Secured Lender for any diminution in value of its interest in the Prepetition Collateral (as defined below);

h.    pursuant to sections 361 and 363 of the Bankruptcy Code, authorization to grant adequate protection to the Prepetition Secured Lender;

i.    pursuant to section 362 of the Bankruptcy Code, modification of the automatic stay to the extent to be set forth in the Postpetition Loan Agreement and other Postpetition Loan Documents;

j.    pursuant to Bankruptcy Rule 4001, to schedule a preliminary hearing on this Motion and obtain authorization, from the entry of the Interim Order until the final hearing, to obtain credit in accordance with the Postpetition Loan Agreement to avoid immediate and irreparable harm to the Debtor's estate; and

k.    pursuant to Bankruptcy Rule 4001, to schedule a final hearing on this Motion to consider entry of the Final Order authorizing the Debtor to borrow the balance of the DIP Facility on a final basis on the terms and conditions set forth in the Postpetition Loan Agreement.

## SUMMARY OF THE DIP FINANCING

6.    Consistent with Bankruptcy Rule 4001(c)(1) and this Court's requirements under Local Rule 4001-2(a)(ii), the principal terms of the  DIP Facility and Interim Order are as follows:[2]

| OVERVIEW OF THE DIP FACILITY | |
|---|---|
| Borrower: | Lily Robotics, Inc. |
| DIP Lender: | Silicon Valley Bank ("SVB" or "DIP Lender") *See* Interim Order, Preamble ¶ (B); Term Sheet, p. 1. |
| DIP Facility: | Up to $3.027 million delayed draw term loan facility, which is subject to a budget acceptable to the DIP Lender (the |

---

[2]    The terms and conditions of the DIP Facility set forth in this Motion are intended solely for informational purposes to provide the Court and interested parties with a brief overview of the significant terms thereof and should only be relied upon as such. This summary is qualified in its entirety by the provisions of the Term Sheet, with the terms to be set forth in the Postpetition Loan Agreement, and the Interim Order. Unless otherwise specified, terms used in this section have the same definitions as those in the Postpetition Loan Agreement.

| | |
|---|---|
| | "Budget"), the initial version of which will be attached to the Interim Order prior to entry.[3] Upon entry of the Interim Order approving the DIP Facility, $800,000.00 of the DIP Facility will be available to be borrowed by the Debtor.<br><br>*See* Interim Order, ¶ 3; Term Sheet, p. 1. |
| Use of Proceeds: | The Borrower shall be entitled, subject to certain withdrawal conditions, to use the proceeds of the DIP Facility to provide capital to the Debtor in compliance with the Budget and to fund the administration costs of the chapter 11 case, including for general corporate purposes and the payment of transaction expenses (including Debtor's and Committee's professionals fees and expenses), subject to the Budget.<br><br>*See* Interim Order, ¶ 4; Term Sheet, p. 1. |
| Maturity Date: | The earliest to occur of: (i) September 1, 2017, or (ii) the effective date of any plan that provides for, *inter alia*, the repayment in full on or before the "effective date" thereof of any and all "Obligations" under the DIP Facility.<br><br>*See* Interim Order, ¶ 30; Term Sheet, p. 1-2. |
| Carve Out: | The liens, security interests, and Superpriority Administrative Expense Claim granted in favor of the DIP Lender in connection with the DIP Facility shall be subject to a Carve Out. The "Carve Out" shall mean (a) to the extent allowed at any time by the Court, but subject in all respects to the aggregate amounts set forth in the current Budget, all accrued and unpaid fees, disbursements, costs and expenses incurred by professionals or professional firms retained by the Borrower (the "Borrower Case Professionals") or retained by an official statutory committee appointed in the this case pursuant to Section 1102 of the Bankruptcy Code (the "Committee"), if any (the "Committee Case Professionals" and, collectively with the Borrower Case Professionals, the "Case Professionals"), through the date of service by the DIP Lender, of a written notice delivered by the DIP Lender to the Debtor, its counsel, the United States Trustee, and lead counsel to any Committee, which notice may be delivered at any time following the occurrence of any Event of Default (the "Carve Out Trigger Notice"), up to and as limited by the respective |

---

[3]    The Debtor believes that the Budget will be adequate, considering all available assets, to pay all administrative expenses due or accruing during the period covered by the Budget.

|  | approved amounts for each Case Professional or category of Case Professional through the date of service of said Carve Out Trigger Notice, in each case as set forth in the Budget (including partial amounts for any Carve Out Trigger Notice given other than at the end of a week, and after giving effect to all carryforwards and carrybacks from prior or subsequent favorable Budget variances), *less* the amount of prepetition retainers received by such Case Professionals and not previously applied to fees and expenses, other than the retainer held by the Debtor's financial advisor, Goldin Associates, LLC ("Goldin") (collectively, subsection (a), the "Case Professionals Carve Out"); and (b) all fees required to be paid to the Clerk of the Court and the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code, plus interest at the statutory rate.<br><br>*See* Interim Order, ¶ 26(a)-(b); Term Sheet, pp. 3-4. |
|---|---|
| Carve Out Cap: | The Carve Out shall not exceed, in an aggregate amount, $125,000.00 for the Borrower Case Professionals and $25,000.00 for Committee Case Professionals (the aggregate of these amounts and the Case Professionals Carve Out being defined as the "Carve Out Cap") less the amount of prepetition retainers received by such Case Professionals, other than the retainer held by Goldin, and not applied to the fees, disbursements, costs and expenses set forth in clause (b) above. The Carve Out Cap shall be reduced on a dollar-for-dollar basis by any payments of fees or expenses of the Borrower Case Professionals or Committee Case Professionals, respectively, made after delivery of the Carve Out Trigger Notice in respect of fees and expenses incurred after delivery of the Carve Out Trigger Notice, except for payments made to Goldin by application of its retainer.<br><br>*See* Interim Order, ¶ 26(c); Term Sheet, p. 4. |
| Interest: | The DIP Facility will bear interest at a fixed rate of ten percent (10.0%) per annum, which interest shall be paid in cash monthly on the outstanding principal balance; *provided that* upon the occurrence of any Event of Default under the DIP Facility at the option of the DIP Lender such interest rate margin shall automatically increase by an additional 5.0% per annum.<br><br>*See* Interim Order, ¶ 2; Term Sheet, Addendum 1, p. 12. |

| | |
|---|---|
| Fees: | The Company shall pay a commitment fee with respect to any commitment payable at a rate per annum equal to 5.0%, upon the earlier of the Maturity Date, Event of Default or Borrower's receipt of proceeds of the Sale (as defined below) to the extent such proceeds are available to pay all or a portion of such fee.<br><br>The Company shall pay an exit fee with respect to any commitment payable at a rate per annum equal to 5.0%, upon the earlier of the Maturity Date, Event of Default or the Borrower's receipt of proceeds of the Sale to the extent such proceeds are available to pay all or a portion of such fee.<br><br>*See* Interim Order, ¶ 2; Term Sheet, Addendum 1, p. 12. |
| Security: | The DIP Facility shall be at all times secured by perfected, senior, first priority, liens on all or substantially all of the assets of the Borrower, whether existing as of the Petition Date or after-acquired, tangible or intangible, and comprising real or personal property, including intellectual property (collectively, the "DIP Collateral"), provided, however, that "DIP Collateral" and "cash collateral" shall not include any customer deposits to be returned but shall include any unclaimed customer deposits that are or may be returned to the Borrower's estate pursuant to the customer refund order[4] or the Plan, to the extent permitted by applicable law.<br><br>The DIP Facility and all obligations of the Borrower to the DIP Lender under the Postpetition Loan Documents (collectively, the "DIP Obligations") shall, subject to the Carve Out, (x) be secured pursuant to section 364(d) of the Bankruptcy Code and the liens securing the DIP Obligations shall prime all other liens and claims on assets, including the respective liens securing the Prepetition Secured Lender, and (y) be entitled to superpriority administrative claims and liens pursuant to section 364(c) of the Bankruptcy Code customary for transactions of this type or as otherwise required by the DIP Lender.<br><br>*See* Interim Order, ¶ 6, 7; Term Sheet, pp. 3. |
| Superpriority Administrative Expense Claim: | The indebtedness of the Debtor under the DIP Facility shall constitute, in accordance with section 364(c)(1) of the |

---

[4]   The Debtor plans to file a motion seeking approval of its customer reimbursement process.

| | |
|---|---|
| | Bankruptcy Code, a superpriority administrative claim having priority over all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code, subject to the Carve Out.<br><br>*See* Interim Order, ¶ 10; Term Sheet, p. 3. |
| <u>Milestones:</u> | The Postpetition Loan Agreement contains the following milestones (the "<u>Milestones</u>"), among others, to be satisfied by the Debtor,<br><br>(a) within 14 days of the Petition Date, the Debtor shall file a motion (the "<u>Sale Motion</u>") requesting, among other things, approval of a Section 363 sale process (the "<u>Sale Process</u>") to sell all of the Borrower's business and assets (which Sale Motion shall include a motion seeking authority to establish bidding procedures for the proposed Sale Process on terms acceptable to the DIP Lender, in its discretion, the "<u>Sale</u>");<br><br>(b) on or before March 17, 2017, the Debtor shall file a motion for the Court to approve procedures to effectuate the return of its customer deposits;<br><br>(c) subject to entry by the Court of a final order with respect to the chapter 11 case and the DIP Facility (in form and substance satisfactory to the DIP Lender granting final approval of the DIP Facility, the "<u>Final Order</u>"), the Borrower, no later than April 1, 2017, shall file a motion seeking approval to enter into a definitive agreement with a "stalking horse" purchaser providing for the Sale and purchase of all or substantially all of Borrower's assets and/or business;<br><br>(d) subject to the Final Order being entered, an order approving the Sale in form and substance reasonably acceptable to the DIP Lender shall have been entered by no later than June 16, 2017;<br><br>(e) subject to the Final Order being entered, on or before June 1, 2017, the Borrower shall file a (i) proposed disclosure statement, and (ii) a proposed plan of reorganization/liquidation in a form and substance reasonably acceptable to the DIP Lender in all respects (the "<u>Plan</u>");<br><br>(f) subject to the Final Order being entered, the Sale shall have been consummated by no later than July 7, 2017;<br><br>(g)  subject to the Final Order being entered, on or before |

| | |
|---|---|
| | August 15, 2017, the Court shall have entered an order, *inter alia*, confirming the Plan; and<br><br>(h) subject to the Final Order being entered, on or before September 1, 2017, the "effective date" under the Plan shall have occurred.<br><br>Any extension and/or modification of the above Sale Process milestones shall be subject to the express prior consent of the DIP Lender in its reasonable discretion.<br><br>*See* Interim Order, ¶ 15(c)(i); Term Sheet, pp. 8-10. |
| Performance Covenant: | Along with the usual and customary for debtor-in-possession financing in similar circumstances, the Borrower shall: (a) perform or observe any covenant, Milestone or other agreement contained in the Term Sheet to be set forth in Postpetition Loan Agreement, the Interim Order or the Final Order, and (b) comply with the Budget, subject to Permitted Variances (defined below).<br><br>For purposes hereof: (a) "<u>Budget</u>" means a 13-week operating budget, in substantially the form attached to the Postpetition Loan Agreement, which shall be in form and substance satisfactory to the DIP Lender, setting forth all forecasted disbursements of the Debtor on a weekly basis for such 13-week period beginning as of the week of the Petition Date; and (b) "<u>Permitted Variances</u>" means a weekly variance not to exceed 15% of the budgeted amounts of total cash disbursements for such week by category (including, but not limited to, Borrower Case Professionals, Borrower's advisors, and Committee Case Professionals) and in the aggregate.<br><br>*See* Interim Order, ¶ 3-4; Term Sheet, pp. 6-10. |
| Events of Default: | Any one or more of the following events shall constitute an "<u>Event of Default</u>" under the DIP Facility: (a) the usual and customary for debtor-in-possession financing in similar circumstances, with grace periods and baskets to be negotiated and agreed, as the DIP Lender may deem necessary or appropriate as a result of the filing of the chapter 11 case, including, without limitation: (i) conversion of the Borrower's chapter 11 case to a case under chapter 7, (ii) appointment of a trustee, examiner with expanded powers or similar insolvency official or administrator, (iii) modification or reversal of any Interim Order or Final Order with respect to the DIP Facility |

|  | without the consent of the DIP Lender; (iv) the entry of an order granting relief from stay to any other party as to a material portion of the DIP Collateral, (v) the failure of the Borrower to obtain the Final Order from the Court satisfactory in form and substance to DIP Lender within 30 days of the Petition Date; (b) failure to perform or observe any covenant or other agreement contained in the Postpetition Loan Agreement, the Interim Order or the Final Order, including the failure to comply with any of the Milestones; and (c) the termination, suspension, or cancellation of the refund of customers.<br><br>*See* Interim Order, ¶ 33; Term Sheet, pp. 10-11. |
|---|---|
| <u>Representations and Warranties:</u> | The Postpetition Loan Agreement shall contain representations and warranties customarily found in loan agreements for similar debtor in possession financings, including, without limitation, with respect to organization in good standing, validity of agreements, tax status, and compliance with laws.<br><br>*See* Term Sheet, p. 6. |
| <u>Expenses & Indemnification:</u> | To the extent required to be paid under the Postpetition Loan Documents, all reasonable out-of-pocket costs and expenses of the DIP Lender, including, without limitation, reasonable legal, accounting, collateral examination, monitoring and appraisal fees and disbursements, financial advisory fees, fees and expenses of other consultants, indemnification and reimbursement obligations with respect to fees and expenses, and other out of pocket expenses, shall be paid by the Borrower in accordance with the Postpetition Loan Agreement.<br><br>*See* Interim Order, 46; Term Sheet, Addendum 1, p. 12. |
| <u>Adequate Protection:</u> | The Prepetition Secured Lender is granted (i) pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, continuing, valid, binding, enforceable and automatically perfected postpetition liens, on all DIP Collateral, including Cash Collateral, (ii) pursuant to section 507(b) of the Bankruptcy Code, allowed superpriority administrative expense claims, to the extent of any diminution in value of its interests in the Prepetition Collateral, in each case, junior to and subject only to the liens and claims securing the DIP Facility.<br><br>*See* Interim Order, ¶ 15-16. |
| <u>Cash Collateral:</u> | The Prepetition Secured Lender affirmatively consents to the use of cash collateral of the Prepetition Collateral under the |

| | Prepetition Loan Agreement (as defined below) under terms set forth in Interim and Final Orders approving this Motion. |
| | The DIP Lender affirmatively consents to the use of cash collateral of the DIP Collateral under the terms to be set forth in the Postpetition Loan Agreement and the Interim Order. |
| | *See* Interim Order, ¶ I. |
| Conditions to Borrowing: | Certain customary conditions precedent to extensions of credit, including, among other things, (i) execution of the Postpetition Loan Agreement, (ii) entry of the Interim Order as acceptable to the DIP Lender, (iii) receipt by the DIP Lender of certain insurance certificates, corporate resolutions, and other documents as reasonably required by the DIP Lender, including satisfactory evidence of the DIP Lender's valid and perfected lien and security interest in all DIP Collateral and its Superpriority Administrative Expense Claim for obligations under the DIP Facility, (iv) receipt by the DIP Lender of the rolling 13 week cash flow, (v) receipt by the DIP Lender of the Prepetition Secured Lender's written consent to the DIP Facility, and (vi) no Default or Event of Default shall have occurred or be existing. <br><br> *See* Interim Order, ¶ 5; Term Sheet, pp. 4-5. |
| Releases: | The Debtor has waived, discharged, and released the DIP Lender and the Prepetition Secured Lender, together with their predecessors, successors, assigns, subsidiaries, parents, affiliates, agents, attorneys, officers, directors, and employees (the "Released Parties"), of any right the Debtor may have to bring or pursue any and all claims, objections, challenges, causes of action, and/or choses in action against the Released Parties. <br><br> *See* Interim Order, ¶ 12. |
| Modification of the Automatic Stay: | The automatic stay imposed under section 362(a) of the Bankruptcy Code will be modified as necessary to (i) permit the Debtor to grant liens to the DIP Lender and Prepetition Secured Lender, (ii) incur all liabilities and obligations to the DIP Lender under the Postpetition Loan Documents, DIP Facility and Interim Order, (iii) authorize the DIP Lender to retain and apply payments as provided by in the Postpetition Loan Documents and the Interim Order, and (iv) permit the DIP Lender to exercise its rights and remedies upon five days prior written notice of the occurrence of any Event of Default. <br><br> *See* Interim Order, ¶ 22, 34. |

7.      Accordingly, the Debtor requests entry of the Interim Order, substantially in the form annexed hereto as **Exhibit A**, and a Final Order, granting the relief requested herein and any other related relief deemed appropriate by the Court.

## BACKGROUND

**A.      General Background**

8.      On the date hereof, the Debtor commenced this bankruptcy case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is administering this case as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

9.      No trustee, examiner, or official statutory committee has been appointed in this chapter 11 case.

10.     The factual background regarding the Debtor, including its business operations, its capital and debt structures, and the events leading to the filing of this chapter 11 case, is set forth in detail in the First Day Declaration, filed concurrently herewith and fully incorporated herein by reference.

**B.      The Prepetition Secured Indebtedness**

11.     On December 14, 2015, the Debtor entered into in a Loan and Security Agreement (the "Prepetition Loan Agreement") with SVB Financial Group, as lender, whereby the Debtor obtained a $4 million term loan (as amended or otherwise modified, the "Prepetition Loan"). Borrowings under the Prepetition Loan bear interest at the prime rate plus 1%. In the event of default, the interest rate increases by 5% per annum. The Debtor's obligations under the Prepetition Loan are secured by a security interest on all of its assets, except for, among other

things, any intellectual property (but not the proceeds or income arising out of the intellectual property) (the "Prepetition Collateral").

12.    The outstanding balance on the Prepetition Loan was approximately $3.78 million as of February 15, 2017.

13.    Immediately prior to the Petition Date, the Prepetition Secured Lender purchased from SVB Financial Group the obligations under the Prepetition Loan, as part of an effort to support the orderly sale of the Debtor's assets and facilitation of the return of customer deposits.  As discussed further below, pursuant to a separate motion filed contemporaneously herewith, the Debtor seeks an order approving consensual usage of cash collateral of the Prepetition Secured Lender for the brief period between the Petition Date and the Court's consideration of interim approval of the DIP Facility and other relief sought herein.

**C.    The Cash Collateral Motion**

14.    On the Petition Date, the Debtor also filed the *Motion of the Debtor for Interim Order Pursuant To 11 U.S.C. §§ 361 And 363: (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling Further Interim Hearing, and (IV) Granting Related Relief*, which seeks immediate relief from this Court to use the cash collateral under the Prepetition Loan Agreement.  To provide sufficient time to document the DIP Facility (and subject to this Court's approval of such motion), the Prepetition Secured Lender consents to the Debtor's use of cash collateral pursuant to the terms of the proposed order attached to the cash collateral motion until entry of the Interim Order approving this Motion in exchange for the adequate protection described in both the cash collateral motion and herein.  The Debtor's access to the Prepetition Collateral is necessary to preserve and maximize value for the benefit of all of the Debtor's stakeholders and ensure an orderly and timely return of customer funds.

D.      **The Debtor in Possession Financing**

15.      SVB, in its role as DIP Lender, has agreed to provide financing to the Debtor on the terms and conditions set forth in the Term Sheet, subject to the negotiation and execution of the Postpetition Loan Agreement and the entry of the Interim Order as further and described below.  The Debtor believes that this postpetition financing is the best available under the circumstances and adequately addresses the Debtor's reasonably foreseeable liquidity needs as it winds down the business while executing customer refunds and conducting a successful Sale Process.

16.      Access to postpetition financing is necessary to enhance the Debtor's liquidity, provide necessary capital during the pendency of this chapter 11 case, and provide customers, employees, and other interested parties confidence that the Debtor has sufficient resources available to organize a successful Sale Process and be able to refund customers in an orderly manner.  If the Debtor is unable to access this postpetition financing, the Debtor's ability to effectively consummate a sale transaction and satisfy its obligations to refund customers will be irreparably harmed.  For the foregoing reasons, the DIP Facility is in the best interest of the Debtor's estate, creditors, and other parties in interest.

**LOCAL RULE 4001-2 DISCLOSURES**

17.      Local Rule 4001-2(a)(i) requires the Debtor to highlight certain provisions included in the Postpetition Loan Agreement and the Interim Order.  As discussed herein, the Debtor believes these provisions are reasonable in light of the facts and circumstances of this case and should be approved.  The provisions under Local Rule 4001-2(a)(i) included in the Postpetition Loan Agreement and Interim Order are as follows:

| Local Rule 4001-2 Concise Statements | | Location |
|---|---|---|
| **Cross-Collateralization** Local Rule 4001-2(a)(i)(A) | The Interim Order does not and the Postpetition Loan Agreement will not provide for cross-collateralization, other than replacement liens as adequate protection. | N/A |
| **Stipulations** Local Rule 4001-2(a)(i)(B) | The Debtor admits that as of the Petition Date, it is indebted and liable to the Prepetition Secured Lender pursuant to the Loan and Security Agreement, and that the prepetition debt is secured by substantially all of the assets of the Debtor, except for intellectual property but including the proceeds of intellectual property. The Interim Order does, and the Postpetition Loan Agreement will contain, stipulations by the Debtor with respect to, among other things, the valid, perfection, and amount of liens held by the Prepetition Secured Lender. | Interim Order, ¶ E(1)-E(8). |
| **Stipulations** Local Rule 4001-2(a)(i)(B) | The Interim Order provides for the waiver, discharge, and release by the Debtor of the Released Parties of any right the Debtor may have to bring or pursue any and all claims, objections, challenges, causes of action, and/or choses in action against the Released Parties. | Interim Order, ¶ 12. |
| **Effect of Stipulations** Local Rule 4001-2(a)(i)(C) | None. | N/A |
| **Section 506(c) Waiver** Local Rule 4001-2(a)(i)(C) | Upon entry of a Final Order, the Debtor shall be deemed to have waived any rights or benefits of section 506(c) with respect to the Prepetition Secured Lender, the DIP Lender, the Prepetition Collateral, and the DIP Collateral. | Interim Order, ¶ 41. |
| **Liens on Chapter 5 Causes of Action** Local Rule 4001-2(a)(i)(D) | The DIP Collateral provides for liens on any recovery by the Debtor on claims and causes of actions arising under chapter 5 of the Bankruptcy Code, for (A) with respect to recoveries arising under section 549 of the Bankruptcy Code, the full amount of any such recovery, and (B) with respect to recoveries arising under all other sections of chapter 5, the amounts necessary to reimburse the DIP Lender for the amount of the Carve Out, if any, used to finance the pursuit of such recovery. | Interim Order, ¶ 5(b) |
| **Provisions Deeming Prepetition Debt to be Postpetition Debt** Local Rule 4001-2(a)(i)(E) | The Interim Order does not, and the Postpetition Loan Agreement will not, deem prepetition secured debt to be postpetition debt or use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt. | N/A |
| **Disparate Treatment of Professionals Under Carve Out** Local Rule 4001-2(a)(i)(F) | The Interim Order provides, and the Postpetition Loan Agreement will provide, $25,000 of the Carve Out to be available for the Committee Case Professionals and $125,000 of the Carve Out to be available for the Borrower Case Professionals. | Interim Order, ¶ 26(c) |
| **Nonconsensual Priming Liens** Local Rule 4001-2(a)(i)(G) | The Interim Order does not and the Postpetition Loan Agreement will not provide for nonconsensual priming of any existing secured lien. | N/A |
| **Section 552(b)(1) Waiver** Local Rule 4001- | Upon entry of the Final Order, the DIP Lender and the Prepetition Secured Lender shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the Debtor | Interim Order, ¶ 54. |

| 2(a)(i)(H) | shall not assert that the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall apply to the DIP Lender or the Prepetition Secured Lender with respect to proceeds, product, offspring, or profits of any of the Prepetition Collateral or the DIP Collateral. | |
|---|---|---|

18.     Given the benefits that the DIP Facility provides overall—most importantly, setting a foundation upon which the Debtor can pursue a value-maximizing sale under chapter 11 and continue to refund customer deposits—the Debtor submits that the inclusion of these highlighted provisions in the Interim Order are appropriate under the facts and circumstances.

## BASIS FOR RELIEF

### I.    THE REQUESTED RELIEF SHOULD BE GRANTED PURSUANT TO SECTIONS 364(c) AND 364(d)(1) OF THE BANKRUPTCY CODE

19.     The Debtor believes that the DIP Facility is the best, and only, financing available to the Debtor under the circumstances and will enable the Debtor, among other things, to refund customers, conduct a competitive Sale Process, wind down operations and otherwise preserve and maximize the value of the Debtor's estate.  If immediate financing is not obtained in accordance with the terms set forth herein and in the Postpetition Loan Documents, the Debtor and its estate will suffer immediate and irreparable harm.

20.     For the reasons stated herein, the Debtor submits that it has satisfied the requirements to obtain postpetition financing on a superpriority, secured basis pursuant to section 364 of the Bankruptcy Code.  Section 364 of the Bankruptcy Code distinguishes among (a) obtaining unsecured credit in the ordinary course of business, (b) obtaining unsecured credit outside the ordinary course of business, and (c) obtaining credit with specialized priority or on a secured basis. Pursuant to section 364(c) of the Bankruptcy Code, if a debtor cannot obtain postpetition credit on an unsecured basis, a court may authorize such debtor to obtain credit or

incur debt that is entitled to super-priority administrative expense status, secured by a senior lien

on unencumbered property or secured by a junior lien on encumbered property.

21.     Under section 364 of the Bankruptcy Code, courts also may authorize postpetition

credit secured by a senior or equal lien on encumbered property if the debtor cannot obtain credit

elsewhere and the interests of existing lienholders are adequately protected.  Specifically, section

364(d)(1) of the Bankruptcy Code provides, in relevant part, that a court may, after notice and a

hearing:

> authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien
> on property of the estate that is subject to a lien only if—
>
> (A)     the [debtor] is unable to obtain credit otherwise; and
>
> (B)     there is adequate protection of the interest of the holder of the lien on the property
> of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1).

22.     The DIP Facility is secured by substantially all of the assets of the Debtor's estate

through super-priority claims, security interests, and secured liens pursuant to section 364. The

circumstances of this chapter 11 case necessitate post-petition financing under section 364(c) and

(d) of the Bankruptcy Code, and the DIP Facility reflects the sound exercise of the Debtor's

business judgment.

**A.     The Debtor Has Exercised Its Business Judgment**

23.     A debtor's decision to enter into a postpetition lending facility under section 364

of the Bankruptcy Code is governed by the business judgment standard. *See, In re Trans World

Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that the interim loan, receivable

facility and asset based facility were approved because they "reflect[ed] sound and prudent

business judgment . . . [were] reasonable under the circumstances and in the best interest of [the

debtor] and its creditors."); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y.

1990) ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest."); *see also In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003) (noting that approval of postpetition financing requires, *inter alia*, an exercise of "sound and reasonable business judgment").

24.    Bankruptcy courts routinely accept a debtor's business judgment on many business decisions, including the decision to borrow money. *See, e.g., In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Colo. 1985) ("[b]usiness judgments should be left to the board room and not to this Court") (citing *Matter of Lifeguard Indust., Inc.*, 37 B.R. 3 (Bankr. S.D. Ohio 1983)). Further, one court has noted that "[m]ore exacting scrutiny [of the debtor's business decisions] would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

25.    Bankruptcy courts generally will defer to a debtor in possession's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious. *See In re Curlew Valley Assocs.*, 14 B.R. 506, 511–13 (Bankr. D. Utah 1981); *see also, Trans World Airlines*, 163 B.R. at 974 (approving interim loan, receivables facility and asset-based facility based upon prudent business judgment of the debtor). Bankruptcy courts generally will not second-guess a debtor in possession's business decisions involving "a business

judgment made in good faith, upon a reasonable basis, and within the scope of his authority

under the Code." *Curlew Valley*, 14 B.R. at 513–14.

26.     The Debtor has exercised sound business judgment in determining the propriety

of the DIP Facility and has satisfied the legal prerequisites to incur debt on the terms and

conditions set forth in the Postpetition Loan Agreement.  The Postpetition Loan Agreement

contains terms and conditions that are the best available under the circumstances and provides

the Debtor with sufficient liquidity during the period of the Budget.  In addition, the Interim

Order preserves the rights of other parties in interest, including any statutory committee of

unsecured creditors, to investigate and challenge the validity, enforceability, perfection, and

priority of the Prepetition Secured Lender and the liens and security interests granted in

connection therewith.

27.     This Court has previously approved similar debtor-in-possession financing

agreements where the debtor was not able to obtain postpetition financing under other

conditions.[5]  *See, e.g.*, *In re Filip Technologies, Inc.*, Case No. 16-12192 (KG) (Bankr. D. Del.

Oct. 27, 2016); *In re Imris, Inc.*, et al., Case No. 15-11133 (Bankr. D. Del. May 25, 2015); *In re

Cal Dive Int'l, Inc., et al.*, Case No. 15-10458 (Bankr. D. Del. April 20, 2015); *In re Digital

Domain Media Grp., Inc., et al.*, Case No. 12-12568 (BLS) (Bankr. D. Del. Nov. 7, 2012).

28.     The funds provided by the DIP Facility are essential to enable the Debtor to

continue to preserve assets in anticipation of a sale and process refunds during the course of this

chapter 11 case.  Failure to obtain approval of the DIP Facility will lead to an immediate

liquidation of the Debtor's estate which, in turn, will impede an orderly refund process, disrupt a

---

[5]     The referenced orders are voluminous in nature and are not attached to this Motion; however, in light of the
requirements of Local Rule 7007-2(a)(vii), undersigned counsel will make copies of each order available to the
Court or to any party that requests them.

competitive sale of the Debtor's assets and adversely affect the value ultimately received by stakeholders.

29.     Accordingly, pursuant to sections 364(c) and (d) of the Bankruptcy Code, the Debtor respectfully submits that they should be granted authority to obtain financing from the DIP Lender on the terms set forth in the Postpetition Loan Agreement.

**B.     The DIP Facility Represents the Best Financing Available**

30.     A debtor seeking financing under section 364(c) of the Bankruptcy Code must make a reasonable effort to seek other sources of unsecured credit, but is granted deference in acting in accordance with its business judgment and, indeed, is not required to seek credit from every possible source. *See, e.g.*, *Ames Dep't Stores*, 115 B.R. at 40 (approving financing facility and holding that debtor made reasonable efforts to satisfy the standards of section 364(c) to obtain less onerous terms where debtor approached four lending institutions, was rejected by two and selected the least onerous financing option from the remaining two lenders); *Bray v. Shenandoah Fed. Sav. & Loan Assoc. (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986) ("The statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable").

31.     Moreover, where few lenders likely can or will extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom.*, *Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 (N.D. Ga. 1989); *see also, In re Garland Corp.*, 6 B.R. 456, 461 (B.A.P. 1st Cir. 1980) (secured credit under section 364(c)(2) authorized, after notice and a hearing, upon showing that unsecured credit was unobtainable); *Ames Dep't Stores*, 115 B.R. at 37–39 (debtor must show that it made reasonable efforts to seek other sources of financing under section 364(a) and (b)).

32.     The Debtor has determined that the terms and conditions of the DIP Facility are the best available under the circumstances and address the Debtor's liquidity needs, and no other entity was willing to provide financing on any better terms.  Postpetition financing is not otherwise available – especially without granting, pursuant to section 364(c)(1) of the Bankruptcy Code, claims having priority over any and all administrative expenses of the kinds specified in sections 503(b) and 507(b) of the Bankruptcy Code, and securing such indebtedness and obligations with the security interests in and the liens upon the DIP Collateral pursuant to section 364(c) and (d) of the Bankruptcy Code (in each case subject to the Carve Out).

33.     The Debtor is unable to obtain the necessary postpetition financing that it needs on terms more favorable than those provided by the DIP Facility.  Accordingly, the Debtor's efforts to obtain postpetition financing satisfy the statutory requirements of section 364(c) of the Bankruptcy Code.

**C.     The DIP Facility Is Necessary to Successfully Wind Down the Debtor's Operations, to Administer Customer Refunds and to Successfully Consummate a Sale of the Debtor's Assets in This Case**

34.     The DIP Facility, if approved, will provide essential capital, allowing the Debtor to maintain the value of its assets and properly continue preparations for a sale of the Debtor's assets in this chapter 11 case.  In addition, the DIP Facility will provide the Debtor's various constituencies, including customers, employees, and other interested parties with confidence in the Debtor's ability to issue customer refunds in an orderly manner.

35.     If the relief sought in this Motion is denied or delayed, the Debtor likely will experience immediate disruption to its customer refund efforts, and the Debtor's ability to consummate a sale transaction and to maximize value for the estate may be irreparably damaged. Accordingly, the DIP Facility is necessary to maximize value for the Debtor's estate and inures to the benefit of creditors and all parties in interest.

21

D.    **The Terms of the DIP Facility Are Fair, Reasonable, and Adequate Under the Circumstances**

36.    In considering whether the terms of postpetition financing are fair and reasonable, courts consider the terms in light of the relative circumstances of both the debtor and the potential lender.  *See Farmland Indus., Inc.*, 294 B.R. at 886; *see also Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Ellingsen MacLean Oil Co.)*, 65 B.R. 358, 365 (W.D. Mich. 1986) (a debtor may have to enter into hard bargains to acquire funds).  The propriety of a proposed financing facility should also be considered in light of current market conditions.  *See* Transcript of Record at 740:4–6, *In re Lyondell Chem. Co.*, No. 09-10023 (REG) (Bankr. S.D.N.Y. Feb. 27, 2009) ("[B]y reason of present market conditions, as disappointing as the [DIP] pricing terms are, I find the provisions are reasonable here and now.").

37.    The terms and conditions of the DIP Facility were negotiated in good faith and at arm's length among the parties, culminating in the Term Sheet and to be documented in the Postpetition Loan Agreement that is designed to provide the Debtor with essential liquidity and maintain the Debtor's wind down operations while working towards a sale of the Debtor's assets. Indeed, when viewed in its totality, the DIP Facility reflects the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and is supported by fair consideration.

E.    **Section 364(e) Protections Should Apply to the DIP Facility**

38.    The terms and conditions of the DIP Facility are fair and reasonable, and were negotiated extensively by well-represented, independent parties in good faith and at arm's length. Accordingly, the Court should find that the DIP Lender is a "good faith" lender within the meaning of Bankruptcy Code section 364(e), and is entitled to all of the protections afforded by that section.

II.     **THE PROPOSED ADEQUATE PROTECTION IS APPROPRIATE**

39.     The focus of the requirement for adequate protection is to protect a secured creditor from the diminution in value of its interest in the particular collateral during the period of use. *See In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) ("The whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy.") (internal citations omitted).

40.     Here, the Prepetition Secured Lender consents to the Debtor's use of the Prepetition Collateral in exchange for the adequate protection provided herein. Indeed, the Prepetition Secured Lender acquired its position immediately before the filing of the bankruptcy case to facilitate the DIP Facility transaction.   The Prepetition Secured Lender understands that the Debtor's ability to continue its sale preparations in an orderly manner and properly process customer refunds is dependent on its ability to fund the postpetition expenses set forth in the Budget.  Use of the Prepetition Secured Lender's collateral is essential to the Debtor's ability to pay its expenses as it advances efforts for a successful sale of its assets.

41.     The proposed adequate protection is appropriate under the circumstances. Specifically, here, absent the financing described herein, the Debtor will certainly be forced to liquidate abruptly.  Accordingly, the Debtor should be authorized to enter into the Postpetition Loan Agreement based on the Term Sheet as set forth herein.

III.    **USE OF CASH COLLATERAL**

42.     The Debtor needs the proposed DIP Facility and the use of cash collateral to pursue a strategic sale of its assets and to fund its wind down of business operations and administration in the interim.  The Debtor has an immediate need for authority to use cash

collateral and obtain the financing under the DIP Facility so that it can avoid immediate and irreparable harm to the Debtor's Sale Process and its estate.

43.     Section 363 of the Bankruptcy Code governs the Debtor's use of property of the estate. Section 363(c)(1) of the Bankruptcy Code provides that:

> If the business of the debtor is authorized to be operated under Section . . . 1108 . . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

44.     The Debtor submits that, under the circumstances here, its request to use cash collateral should be approved. The DIP Lender affirmatively consents to the use of cash collateral provided that the relief requested herein is granted.

45.     Absent such authority, the Debtor would not have access to any additional liquidity, which would imperil its ability to pursue a sale of its assets.  Any delay in pursuing a sale poses grave risk to the Debtor and its ability to implement the strategy that will yield the highest recovery for the Debtor, its estate and creditors.  Accordingly, the proposed adequate protection is fair, reasonable, and sufficient to justify the requirements of sections 363(c)(2) and (3) of the Bankruptcy Code.

## IV.    MODIFICATION OF THE AUTOMATIC STAY ON A LIMITED BASIS IS WARRANTED

46.     The relief requested herein contemplates a modification of the automatic stay pursuant to Bankruptcy Code section 362 to the extent necessary to permit the DIP Lender and/or Prepetition Secured Lender to exercise, upon the occurrence and during the continuation of any Event of Default, all rights and remedies provided for in the Postpetition Loan Agreement, the Postpetition Loan Documents, the Interim Order, and the Final Order, and to take various actions without further order of or application to the Court.

47.     Stay modification provisions of this sort are ordinary and usual features of debtor in possession financing facilities and, in the Debtor's business judgment, are reasonable under the present circumstances.  Accordingly, the Court should modify the automatic stay to the extent contemplated by the Postpetition Loan Agreement and Postpetition Loan Documents and the proposed DIP Orders.

## V.     INTERIM APPROVAL AND SCHEDULING OF FINAL HEARING

48.     As set forth above, Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to obtain credit under section 364 of the Bankruptcy Code may not be commenced earlier than 14 days after the service of such motion.  Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

49.     Absent relief on an interim basis pursuant to the Interim Order, the Debtor will be unable to satisfy its immediate and projected payment obligations, including payroll and other operating expenses.  Given the immediate and irreparable harm to be suffered by the Debtor absent interim relief, the Debtor respectfully requests that the Court schedule and conduct a preliminary hearing on the Motion and (a) authorize the Debtor, from the entry of the Interim Order until the Final Hearing, to obtain credit under the terms contained in the Term Sheet with terms to be formalized in the Postpetition Loan Agreement, and (b) schedule the Final Hearing.

## VI.     WAIVER OF BANKRUPTCY RULES 6004(a) AND (h)

50.     The Debtor believes an efficient and expeditious approval and implementation of the DIP Facility is in the best interests of its creditors and other parties in interest, including customers. Accordingly, the Debtor seeks waiver of the notice requirements under Bankruptcy

Rule 6004(a) and the 14-day stay of orders authorizing the use, sale, or lease of property under

Bankruptcy Rule 6004(h).

## **NOTICE**

51.    Notice of this Motion will be provided to: (i) the Office of the United States

Trustee for the District of Delaware; (ii) counsel to Silicon Valley Bank; (iii) counsel to Spark

Capital; (iv) the parties included on the Debtor's list of thirty (30) largest unsecured creditors; (v)

the Internal Revenue Service; (vi) the United States Attorney for the District of Delaware and all

other states in which the Debtor operates; (vii) the Securities and Exchange Commission; and

(viii) the Attorneys General for the state of Delaware and all other states in which the Debtor

operates.  The Debtor submits that, in light of the nature of the relief requested, no other or

further notice is necessary or required.

## **NO PRIOR REQUEST**

52.    No previous request for the relief sought in this Motion has been made to this

Court or any other court.

## **CONCLUSION**

WHEREFORE, the Debtor respectfully requests that the Court (i) enter an order

substantially in the form of the proposed Interim Order attached hereto as **Exhibit A**, (ii)

schedule a Final Hearing, (iii) after the Final Hearing, enter the Final Order substantially in the

form that shall be filed with the Court, and (iv) grant such other and further relief as this Court

deems just and proper.

*[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]*

Dated: February 27, 2017
      Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**


By: */s/ Marcy J. McLaughlin*_____
    Robert J. Dehney (DE Bar No. 3578)
    Andrew R. Remming (DE Bar No. 5120)
    Marcy J. McLaughlin (DE Bar No. 6184)
    1201 North Market Street, 16th Floor
    P.O. Box 1347
    Wilmington, Delaware 19899-1347
    Telephone: (302) 658-9200
    Facsimile: (302) 658-3989
    E-mail: rdehney@mnat.com
           aremming@mnat.com
           mmclaughlin@mnat.com


*-and-*


**ORRICK, HERRINGTON & SUTCLIFFE, LLP**
Douglas S. Mintz (admission *pro hac vice* pending)
1152 15th Street NW
Washington, DC 20005
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
Email: dminz@orrick.com

Laura Metzger (admission *pro hac vice* pending)
Jennifer Asher (admission *pro hac vice* pending)
51 West 52nd Street
New York, N.Y. 10019
Telephone: (212) 506-5000
E-mail: lmetzger@orrick.com
       jasher@orrick.com

*Proposed Counsel for the Debtor and*
*Debtor in Possession*