# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>LILY ROBOTICS, INC.,<br><br>　　　　　　　　　Debtor.[1] | Chapter 11<br><br>Case No. 17-10426 (KJC)<br><br>Re. D.I. 58, 169, 210, 213, 320, 335 |

## ORDER (A) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES, AND OTHER INTERESTS; AND (B) GRANTING RELATED RELIEF

Upon the motion, dated March 13, 2017 (D.I. 58) (the "Motion"), of the above-captioned debtor and debtor in possession (the "Debtor") pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for, among other things:

    I.   entry of an order (the "Sale Procedures Order")[2]:

        a.   approving bidding procedures (the "Bidding Procedures") with respect to the sale of substantially all of the Debtor's assets;

        b.   approving the form and manner of the Auction Notice and the requirements for publication thereof;

        c.   approving the Assumption Procedures; and

---

[1]   The last four digits of the Debtor's federal tax identification number are 8604. The Debtor's headquarters and mailing address is c/o Curtis G. Solsvig, III, Goldin Associates, LLC, 350 Fifth Avenue, New York, NY 10118.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Procedures Order, or if not defined therein, such terms shall have the meanings ascribed to them in the applicable APA executed between the Debtor and each Buyer (as defined below).

      d.  scheduling a deadline for bidding on the Debtor's assets, and scheduling an Auction and Sale Hearing.

  II.  entry of this order (the "<u>Order</u>"):

      a.  approving the Sale of the Purchased Assets, free and clear of all liens, claims (including, without limitation, as defined in section 101(5) of the Bankruptcy Code), rights or claims based on any successor or transferee liability, interests, encumbrances, rights, remedies, restrictions, liabilities and contractual commitments of any kind or nature whatsoever, whenever arising, whether at law or in equity; and

      b.  granting certain related relief;

and the Court having been held a hearing on April 25, 2017 to consider the relief requested in the Sale Procedures Order; and the Court having entered the Sale Procedures Order (D.I. 213) on April 28, 2017, which, among other things, approved the Bidding Procedures; and the Auction having been held on June 7, 2017, continued telephonically on June 8, 2017 and continued telephonically and closed on June 9, 2017 in accordance with the Sale Procedures Order; and at the conclusion of the Auction, Mota Group, Inc. and LR Acquisition, LLC having each been chosen as a Successful Bidder (each, a "<u>Successful Bidder</u>" or "<u>Buyer</u>") with respect to the Purchased Assets subject to such Buyer's bid and described more particularly in each Successful Bidder's APA (as defined below); and the Debtor having agreed to enter into and consummate an Asset Purchase Agreement with each Successful Bidder attached hereto as <u>Exhibit A</u> and <u>Exhibit B</u> (each, an "<u>APA</u>"); and the Sale Hearing having been held on June 15, 2017 in accordance with the Sale Procedures Order; and upon the Declaration of Curtis Solsvig, Chief Restructuring Officer to the Debtor dated the same day hereof ("<u>Solsvig Declaration In Support of Sales</u>"), and upon the record of the hearing to approve the Sale Procedures Order (the "<u>Sale Procedures Hearing</u>") and the Sale Hearing, and all of the proceedings before this Court; and this Court having reviewed the Motion and any objections thereto and having found and determined that the relief sought in the Motion, and entry of this Order is in the best interests of the Debtor,

the Debtor's estate, its creditors, and other parties in interest; and after due deliberation thereon and sufficient cause appearing therefore, it is hereby:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:**

**A.    Findings and Conclusions:** The findings and conclusions set forth herein and in the record of the Sale Hearing constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.    Jurisdiction, Venue and Core Proceeding:** This Court has jurisdiction over this chapter 11 case pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  The matters covered by this order are core proceedings under 28 U.S.C. § 157(b)(2).  Venue is proper in this district and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Venue in this district and before this Court was proper as of the Petition Date and continues to be proper.

**C.    Statutory Predicates.** The statutory predicates for the relief sought in the Motion are 105, 363, 365, 503 and 507 of the Bankruptcy Code, Rules 2002, 6004, 6006, 9008 and 9014 of the Bankruptcy Rules and Rules 2002-1 and 6004-1 of the Local Rules.  The consummation of the transactions contemplated by the Motion, each APA and this Order is legal, valid and properly authorized under all such provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and all of the applicable requirements of such sections and rules have been complied with in respect of such transactions.

3

**D.    Notice.** As evidenced by the affidavits of service and publication filed with the Court, proper, timely, adequate, and sufficient notice of the Motion, the Bidding Procedures, the Sale Procedures Hearing, the Sale Procedures Order, the Sale Hearing, the Sales and all transactions contemplated therein or in connection therewith, and all deadlines related thereto, was given under the particular circumstances and no further notice need be provided.  A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice pursuant to the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

**E.** Actual written notice of the Motion, the Bidding Procedures, the Sale Procedures Hearing, the Auction, the Sale Hearing, the Sales and all transactions contemplated therein or in connection therewith, and all deadlines related thereto has been given to all interested persons and entities, including, without limitation: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Committee, (iii) counsel to the DIP Lender; (iv) counsel to the Prepetition Secured Lender; (v) the parties included on the Debtor's consolidated list of thirty (30) largest unsecured creditors; (vi) the Internal Revenue Service; (vii) the United States Attorney for the District of Delaware and in the Northern District of California; (viii) all known parties that may be asserting a lien or interest against any of the Purchased Assets; (ix) any party who has knowingly expressed an interest in purchasing the Purchased Assets; (x) the Attorneys General for Delaware and California; (xi) all parties who have requested notice in this chapter 11 case pursuant to Local Rule 2002-1(b); and (xii) all parties required to be provided notice pursuant to the Sale Procedures Order.  Other parties interested in bidding on the Purchased Assets were provided, upon request, sufficient information to make an informed judgment on whether to bid on the Purchased Assets.  The foregoing constitutes proper, timely, adequate, and

4

sufficient notice under the particular circumstances of this case, and no further notice need be provided.

F.    The Auction Notice was published in *The San Jose Mercury News* on May 2, 2017. Such publication notice complied with the Sale Procedures Order, and provided sufficient and proper notice to any other interested parties, including those whose identities are unknown to the Debtor.

G.    **Extensive Efforts by Debtor.** The Debtor has worked with its counsel and other advisors to implement a viable transaction, or combination of transactions, that would allow them to maximize the value of the Purchased Assets. The Debtor also worked closely with the Committee and its advisors in marketing the assets. The transactions that are the subject of this Order are the result of the Debtor's extensive efforts in seeking to maximize recoveries to the Debtor's estate, for the benefit of the Debtor's stakeholders.

H.    **Business Justification.** The Debtor has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for each Sale of the Purchased Assets, as applicable, to each Buyer.

I.    **Sale Procedures Order.** On April 28, 2017, this Court entered the Sale Procedures Order approving, among other things, Bidding Procedures for the sale of substantially all of the Debtor's assets. The Bidding Procedures provided a full, fair and reasonable opportunity for any entity to make an offer to purchase the Debtor's assets, including the Purchased Assets.

J.    **Adequate Marketing; Auction; Consultation; Highest and Best Bids.** As demonstrated by (i) the record and any evidence proffered or adduced at the Sale Hearing,

(ii) the Solsvig Declaration In Support of Sales, and (iii) the representations of counsel made on the record at the Sale Procedures Hearing and the Sale Hearing:

a) the Debtor has adequately marketed the Purchased Assets and conducted the sale process in compliance with the Sale Procedures Order;

b) a reasonable opportunity has been given to any interested party to make the highest and best offer for the Purchased Assets subject thereto;

c) on June 7, June 8 and June 9, 2017, the Debtor conducted an Auction of its assets consistent with the terms of the Sale Procedures Order. Representatives of the Debtor, the Unsecured Creditors Committee, the DIP Lender, GoPro, LR Acquisition, LLC and Mota Group, Inc. attended the Auction. A transcript of each day of the Auction is attached to the Solsvig Declaration In Support of Sales as Exhibits A, B & C.

d) In conducting the Auction and selecting the Successful Bids (as well as any Baseline Bid or Lead Bid during the Auction), the Debtor consulted with the Consultation Parties. The Prepetition Secured Lender did not attend the Auction and was not a Consultation Party at the Auction.

e) the aggregate consideration provided by the Buyers collectively in the APAs constitutes the highest or otherwise best offer for the Purchased Assets;

f) the aggregate consideration provided by the Buyers in their APAs collectively constitutes fair and reasonable consideration for the Purchased Assets subject thereto and constitutes reasonably equivalent value under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia;

g) the Sales will provide a greater recovery for the Debtor's creditors with respect to the Purchased Assets than would be provided by any other practically available alternative;

h) taking into consideration all relevant factors and circumstances, no other entity or combination of entities has offered to purchase the Purchased Assets for greater economic value to the Debtor or its estate than the aggregate Purchase Price provided in the APAs; and

i) the Debtor's determination that the aggregate Purchase Price provided in both APAs constitute the highest or best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtor's business judgment.

**K.    Opportunity to Object.**  A reasonable opportunity to object or be heard with respect to the Motion, and all relief requested therein has been afforded to all interested parties.

**L.    Property of the Estate.**  The Purchased Assets are property of the Debtor's estate and title thereto is vested in the Debtor's estate.

**M.    Sale in Best Interests.**  The actions taken by the Debtor and each Buyer are appropriate under the circumstances of this chapter 11 case and are in the best interests of the Debtor, its estate and creditors, and other parties in interest.  Approval of each APA and of each Sale and all related transactions at this time is in the best interests of the Debtor, its creditors, its estate, and all other parties in interest.

**N.    Arm's-Length Sale.**  Each APA, each Sale and the transactions contemplated therein and associated therewith were negotiated, proposed, and entered into by the Debtor and each Buyer without collusion, in good faith, and from arm's-length bargaining positions.  Neither the Debtor, its insiders and affiliates, nor either Buyer has engaged in any conduct that would

7

cause or permit either APA, either Sale, or any part of the transactions thereby to be avoided under section 363(n) of the Bankruptcy Code.

>    **O.    Good Faith Buyer.**  Each Buyer is a good faith buyer under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.

>    **P.    Corporate Authority.**  The Debtor (i) has full corporate power and authority to execute each APA and all other documents contemplated thereby, and each Sale of the Purchased Assets has been duly and validly authorized by all necessary corporate action of the Debtor, (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by each APA, (iii) has taken all corporate action necessary to authorize and approve each APA and the consummation by the Debtor of the transactions contemplated thereby, and (iv) needs no consents or approvals, other than those expressly provided for in each APA, which may be waived in accordance with the terms therewith.

>    **Q.    Free and Clear Findings Required by each Buyer.**  Each Buyer would not have entered into the respective APA and would not consummate a Sale if the sale of the Purchased Assets to each Buyer was not, pursuant to section 363(f) of the Bankruptcy Code, free and clear of (i) all liens, claims, pledges, options, charges, hypothecations, easements, security interests, rights-of-way, encroachments, mortgages and deeds of trusts or other encumbrances, other than Permitted Liens (collectively, the "Liens"), (ii) all claims as defined in section 101(5) of the Bankruptcy Code, including all rights or causes of action (whether in law or in equity), warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions, indemnification claims or liabilities relating to any act or omission of the Debtor or any other person prior to the Closing, consent rights, options, contract rights, covenants and interests of any kind or nature whatsoever (known or

8

unknown, matured or unmatured, accrued or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of the above-captioned case, and whether imposed by agreement, understanding, law, equity or otherwise (collectively the "Claims"), and (iii) all debts, liabilities, obligations, contractual rights and claims and labor, employment and pension claims, in each case, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or un-matured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of this chapter 11 case, and whether imposed by agreement, understanding, law, equity or otherwise (collectively the "Interests"). Each Sale of the Purchased Assets shall be free and clear of, and neither Buyer shall be responsible for, any Liens, Claims or Interests, including, without limitation, in respect of the following: (i) any rights or Claims based on any successor or transferee liability, (ii) any Liens, Claims or Interests that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtor's or each Buyer's interest in the Purchased Assets, or any similar rights; (iii) any labor or employment agreements; (iv) any pension, multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of ERISA), health or welfare, compensation or other Benefit Plans, agreements, practices and programs, including, without limitation, any pension plans of the Debtor or any multiemployer plan to which the Debtor has at any time contributed to or had any liability or potential liability; (vi) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title

9

VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, as amended, (g) the Americans with Disabilities Act of 1990, (h) Section 4980B of the Internal Revenue Code of 1986 and Part 6 of Title I of ERISA, together in each case, with applicable regulations, in each case, as amended and in effect from time to time (collectively, "COBRA"), (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, or (k) any other state or federal benefits or claims relating to any employment with the Debtor or any of its predecessors; (vii) any bulk sales or similar law; (viii) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the closing; or (ix) any unexpired and executory contract or unexpired lease to which the Debtor is a party. A sale of the Purchased Assets other than one free and clear of all Liens, Claims, and Interests would yield substantially less value for the Debtor's estate, with less certainty, than the Sales as contemplated. Therefore, the Sale contemplated by each APA free and clear of all Liens, Claims and Interests is in the best interests of the Debtor, its estate and creditors, and all other parties in interest.

  **R. Binding and Valid Transfer.** The transfer of the Purchased Assets to each Buyer will be a legal, valid, and effective transfer of the Purchased Assets and will vest each Buyer with all right, title, and interest of the Debtor to the Purchased Assets free and clear of all Liens, Claims, and Interests and any liabilities of the Debtor.

  **S. Satisfaction of 363(f) Standards.** The Debtor may sell the Purchased Assets to each Buyer free and clear of all Liens, Claims and Interests of any kind or nature whatsoever,

because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Liens, Claims and Interests who did not object, or who withdrew their objections, to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. In all cases, each such person with Liens, Claims or Interests in the Purchased Assets is enjoined from taking any action against each Buyer, and each of their respective affiliates or any agent of the foregoing to recover any such Lien, Claim or Interest.

     **T.    Necessity of Order.**    Neither Buyer would have entered into an APA and consummate the transactions thereunder without all of the relief provided for in this Order (including, but not limited to, that the transfer of the Purchased Assets to each Buyer be free and clear of all Liens, Claims and Interests). The consummation of the transactions pursuant to this Order and each APA is necessary for the Debtor to maximize the value of its estate for the benefit of all creditors and other parties in interest.

     **U.    Final Order.**    This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein.

     **V.    Best Interests.**    Entry of this Order is in the best interests of the Debtor, the Debtor's estate, its creditors, and other parties in interest.

<u>**ORDER**</u>

     **ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

     **1.    Findings of Fact and Conclusions of Law:** The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein

11

and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014. To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

2.    **Motion Granted.** The Motion is granted and the relief requested therein with respect to each Sale is granted and approved in its entirety, as set forth herein.

3.    **Objections are Overruled.** Any objections to the entry of this Order or to the relief granted herein or the relief requested in the Motion that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice.

4.    **Approval.** Each APA, and all the terms and conditions thereof, is approved. Pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtor is authorized to perform its obligations under, and comply with the terms of, each APA and consummate each Sale and the related transactions pursuant to, and in accordance with, the terms and conditions of each APA and this Order. The Debtor is authorized to execute and deliver, and empowered to perform under, consummate, and implement, each APA, together with all additional instruments and documents that the Debtor or each Buyer deem necessary or appropriate to implement each APA and effectuate the transactions contemplated therein, and to take all further actions as may reasonably be required by each Buyer for the purpose of assigning, transferring, granting, conveying, and conferring to each Buyer or reducing each Buyer's possession the Purchased Assets or as may be necessary or appropriate to the performance of the obligations as contemplated by each APA.

5.    **Alternate Bidders.** Mota Group, Inc. and GoPro, Inc. are hereby approved as the Alternate Bidders and pursuant to Bankruptcy Code sections 105, 363 and 365, the Asset

Purchase Agreements submitted by Mota Group, Inc. and GoPro, Inc. (the "Alternate Bids"), the Sale of substantially all the Debtor's assets and consummation of the Sale are hereby approved as the Alternate Bids. The Alternate Bids, with an aggregate purchase price of $700,000 for substantially all of the Debtor's assets, are hereby approved and authorized as Alternate Bids and shall remain open as Alternate Bids pursuant to the terms of the Sale Procedures Order and the Bidding Procedures. If the Successful Bidders fail to consummate any Sale (following approval of such Sale by the Bankruptcy Court) for any reason, then the respective Alternate Bids will be deemed to be Successful Bids and the Debtor shall be authorized, but not required, to effectuate the transactions contemplated by the respective Alternate Bids without further order of the Bankruptcy Court, and in such case the findings and other provisions of this Order shall apply to the Alternate Bidders and Alternate Bids to the same extent they do with respect to the Successful Bidders.

6. **Binding Effect of Order.** This Order and each APA shall be binding in all respects upon all known and unknown creditors of, and holders of equity security interests in, the Debtor, including any holders of Liens, Claims and Interests, all successors and assigns of each Buyer, the Debtor, the Purchased Assets, and any trustees appointed in the Debtor's chapter 11 case or upon a conversion to a case under chapter 7 of the Bankruptcy Code, and this Order shall not be subject to amendment or modification and each APA shall not be subject to rejection.

7. **Injunction.** All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtor to transfer the Purchased Assets to each Buyer in accordance with each APA and this Order. Following the Closing, all Persons (including, but not limited to, the Debtor, creditors, investors, current and former employees and shareholders, administrative agencies, governmental units, secretaries of state,

federal, state, and local officials, including those maintaining any authority relating to any environmental, health and safety laws, and the successors and assigns of each of the foregoing) holding Liens, Claims or Interests in the Purchased Assets or against the Debtor in respect of the Purchased Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing any Liens, Claims or Interests of any kind or nature whatsoever against either Buyer or any affiliate of either Buyer or any of its respective property, successors and assigns, or the Purchased Assets, as an alleged successor or on any other grounds. No Person shall assert, and neither Buyer and the Purchased Assets shall be subject to, any defaults, breaches, counterclaims, offsets, defenses (whether contractual or otherwise, including, without limitation, any right of recoupment), liabilities, claims and interests, or basis of any kind or nature whatsoever to delay, defer, or impair any right of either Buyer or the Debtor, or any obligation of any other party, under or with respect to, any Purchased Assets, with respect to any act or omission that occurred prior to the Closing Time or with respect to any other agreement or any obligation of the Debtor that is not an Assumed Liability.

8.     **General Assignment.**  Upon the Closing, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Debtor's interests in the Purchased Assets and a bill of sale transferring good and marketable title in the Purchased Assets to each Buyer free and clear of all Liens, Claims and Interests.  Each and every federal, state, and local governmental agency, quasi-agency, or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions.

9.    **Transfer Free and Clear.**    Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Purchased Assets shall be transferred to each Buyer as required under each APA, and such transfer shall be free and clear of all Liens, Claims, and Interests of any Person, including, without limitation, all such Liens, Claims, and Interests specifically enumerated in paragraph [Q] of this Order, whether arising by agreement, by statute or otherwise and whether occurring or arising before, on or after the Petition Date, whether known or unknown, occurring or arising prior to such transfer, provided, however, that unless otherwise agree to between the Debtor and DIP Lender in accordance with any order approving post-petition financing pursuant to DIP Loan Agreement (as defined below) (and without the consent of either Buyer), all proceeds of each Sale shall be paid to the DIP Lender in cash at Closing for application to the then-outstanding amounts owed by the Debtor to the DIP Lender pursuant to that certain Senior Secured Super Priority Debtor-In-Possession Loan Agreement (the "DIP Loan Agreement") dated as of April 4, 2017, as amended and in effect, and upon repayment in full in cash of all such outstanding amounts owed to the DIP Lender, all remaining Liens, Claims, and Interests of any Person (including the Liens, Claims, and Interests of the DIP Lender) shall attach to the proceeds of each Sale in the order of their priority, with the same validity, force and effect which they now have against the Purchased Assets (subject to any claims and defenses the Debtor or Committee may possess with respect thereto).

10.    **Valid Transfer.**    The transfer of the Purchased Assets to each Buyer pursuant to each APA constitutes a legal, valid, and effective transfer of the Purchased Assets and shall vest each Buyer with all right, title, and interest of the Debtor in and to the Purchased Assets free and clear of all Liens, Claims and Interests of any kind or nature whatsoever.

11.  **Exculpation and Release.**  Neither Buyer nor any of its respective affiliates, successors, and assigns, shall have, or incur any liability to, or be subject to any action by, the Debtor or any of its predecessors, successors, or assigns, arising out of the negotiation, investigation, preparation, execution, or delivery of each APA and the entry into and consummation of each Sale, except as expressly provided in each APA and this Order.

12.  **Direction to Release Interests.**  Upon the Closing, each of the Debtor's creditors and any other holder of a Lien, Claim or Interest is authorized and directed, without cost to the Debtor or either Buyer to execute such documents and take all other actions as may be necessary to release its Lien, Claim or Interest in the Purchased Assets, if any, as such Lien, Claim or Interest may have been recorded or may otherwise exist.  If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing a Lien, Claim or Interest in the Debtor or the Purchased Assets shall not have delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens, Claims and Interests, which the person or entity has with respect to the Debtor or the Purchased Assets or otherwise, then (i) the Debtor is authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Debtor or the Purchased Assets, and (ii) each Buyer is authorized to file, register, or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the release of all Liens, Claims and Interests of any kind or nature whatsoever in the Debtor or the Purchased Assets.  Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by each APA, including, without limitation,

16

recordation of this Order. This Order shall be binding upon and shall govern the acts of all Persons including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of such assets or other property interests.

13. **No Interference.** Following the Closing Time, no holder of any Lien, Claim or Interest in the Purchased Assets shall interfere with either Buyer's title to, or use and enjoyment of, the Purchased Assets based on, or related to, any such Lien, Claim or Interest, or based on any actions the Debtor may take in its chapter 11 case.

14. **Surrender of Possession.** All entities that are currently, or as of the Closing Time, may be, in possession of some or all of the Purchased Assets are hereby directed to surrender possession of the Purchased Assets to the relevant Buyer on the Closing, unless such Buyer otherwise agrees.

15. **Post-Closing Actions and Transactions.** The Debtor and each Buyer, and each of their respective officers, employees, and agents, will be authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtor or each such Buyer deem necessary or appropriate to implement and effectuate the terms of each APA and this Order. Further, effective as of the Closing, each Buyer, its successors and assigns, shall be designated and appointed the Debtor's true and lawful attorney and attorneys, with full power of substitution, in the Debtor's name and stead, its successors and assigns, to demand and

17

receive any and all of the Purchased Assets, and from time to time institute and prosecute in the name of each Buyer, for the benefit of each Buyer, its successors and assigns, any and all proceedings at law, in equity, or otherwise, that each Buyer, its successors or assigns, may deem proper for the collection or reduction to possession of any of the applicable Purchased Assets, and to do all acts and things with respect to the applicable Purchased Assets that each Buyer, its successors and assigns, shall deem desirable. All of the foregoing powers granted to each Buyer are coupled with an interest and are irrevocable by the Debtor.

16. **Sale is Self-Executing.** Each Sale is self-executing, and neither the Debtor nor each Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Order.

17. **No Discriminatory Treatment.** To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Purchased Assets sold, transferred, or conveyed to each Buyer on account of the filing or pendency of this chapter 11 case or the consummation of the transactions contemplated by each APA.

18. **No Successor Liability.** Neither Buyer, nor any of its respective successors or assigns, or any of its respective affiliates shall have any liability for any Lien, Claim or Interest that arose or occurred prior to the Closing, or otherwise is assertable against the Debtor or is related to the Purchased Assets prior to the Closing. Neither Buyer is nor shall be deemed a "successor" to the Debtor or its estate, have, de facto or otherwise, merged with or into the Debtor or be an alter ego or mere continuation or substantial continuation of the Debtor or the enterprise of the Debtor under any theory of law or equity as a result of any action taken in

18

connection with each APA or any of the transactions or documents ancillary thereto or
contemplated thereby or in connection with the acquisition of the Purchased Assets.

19.    Without limiting the foregoing, and except as otherwise set forth in each APA,
neither Buyer shall have any successor, transferee, derivative, or vicarious liabilities of any kind
or character for any Liens, Claims or Interests, including under any theory of successor or
transferee liability, de facto merger or continuity, whether known or unknown as of the Closing,
now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated
or unliquidated, with respect to any of the following: (i) any foreign, federal, state, or local
revenue, pension, ERISA, tax, labor, employment, antirust, environmental, or other law, rule, or
regulation (including without limitation filing requirements under any such laws, rules or
regulations); (ii) under any products liability law, rule, regulation, or doctrine with respect to the
Debtor's liability under such law, rule, regulation, or doctrine, or under any product warranty
liability law or doctrine; (iii) any employment or labor agreements, consulting agreements,
severance arrangements, change-in-control agreements, or other similar agreement to which the
Debtor is a party; (iv) any pension, welfare, compensation, or other Benefit Plans, agreements,
practices, and programs, including, without limitation, any pension plan of the Debtor; (v) the
cessation of the Debtor's operations, dismissal of employees, or termination of employment or
labor agreements or pension, welfare, compensation, or other employee benefit plans,
agreements, practices and programs, obligations that might otherwise arise from or pursuant to
(a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the
Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age
Discrimination and Employment Act of 1967, (g) the Americans with Disabilities Act of 1990,
or (h) COBRA; (vi) environmental liabilities, debts, Claims, or obligations arising from

conditions first existing on or prior to the Closing Time (including, without limitation, the presence of hazardous, toxic, polluting, or contamination substances or wastes), which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq.; (vii) any liabilities, debts, or obligations of or required to be paid by the Debtor for any taxes of any kind for any period; (viii) any liabilities, debts, commitments, or obligations for any taxes relating to the operation of the applicable Purchased Assets prior to the Closing; (ix) any bulk sale law; and (x) any litigation.

20. **Fair Consideration.**   The consideration provided by each Buyer for the Purchased Assets under each APA shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.   Neither Sale may be avoided under section 363(n) of the Bankruptcy Code.   Neither APA entered into, and neither Sale is being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtor under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law.   Neither the Debtor nor either Buyer have entered into the applicable APA or any agreement contemplated thereby or are consummating each Sale with any fraudulent or otherwise improper purpose, including, without limitation, to evade any pension liabilities.   No other person or entity or group of persons or entities has offered to purchase the Purchased Assets for an amount that would provide greater value to the Debtor and its estate than the value provided by each Buyer.   The Court's approval of the Motion and each APA are in the best interests of the Debtor, the bankruptcy estate of the Debtor, its creditors and all other parties in interest.

20

21.   **Retention of Jurisdiction.**   This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Order, all amendments thereto, and any waivers and consents thereunder, including, but not limited to, retaining jurisdiction to (i) compel delivery of the applicable Purchased Assets to each Buyer; (ii) interpret, implement, and enforce the provisions of this Order; (iii) protect each Buyer, any of such Buyer's affiliates, or any agent of the foregoing, against any Liens, Claims or Interests against the Debtor or the applicable Purchased Assets of any kind or nature whatsoever and (iv) enter any order under sections 363 and 365 of the Bankruptcy Code.

22.   **Good Faith Buyer.**   The transactions contemplated by each APA are undertaken by each Buyer without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided in this Order to consummate the transactions shall not affect the validity of the transactions. Each Buyer is a buyer in good faith of the Purchased Assets and is entitled to all the protections afforded by section 363(m) of the Bankruptcy Code.

23.   **No Bulk Law Application.**   No bulk sales law or similar law shall apply in any way to the transactions contemplated by either Sale, either APA, the Motion, and this Order.

24.   **Inconsistencies with Prior Orders, Pleadings or Agreements**.   To the extent this Order is inconsistent with any prior order or filing with respect to the Motion in this chapter 11 case, the terms of this Order shall govern and any prior orders shall be deemed amended or otherwise modified to the extent required to permit consummation of each Sale. To the extent there is any inconsistency between the terms of this Order and the terms of either APA

21

(including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

25. **Failure to Specify Provisions.** The failure to specifically include any particular provisions of each APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that each APA be authorized and approved in its entirety.

26. **Non-Material Modifications.** Each APA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not, based on the Debtor's judgment, have any adverse effect on the Debtor's estate.

27. **No Stay of Order.** Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the Debtor and each Buyer are authorized to close the transactions immediately upon entry of this Order. Time is of the essence in closing the transactions referenced herein, and the Debtor and each Buyer intend to close the transactions as soon as practicable. This Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry of this Order. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

28. **Headings:** Headings utilized in this Order are for convenience of reference only, and do not constitute a part of this Order for any other purpose.

29. **Time Periods.** All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

30.  **Nonseverability.**  The provisions of this order are nonseverable and mutually

dependent.

Dated: June 20    , 2017
       Wilmington, Delaware

_____
THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE